IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIAELENA BARBO GARZA,<br><br>         Plaintiff,<br><br>   vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>         Defendant.<br>_____/ | Case No. 08-cv-1785-JLT<br><br>DECISION AND ORDER ON<br>SOCIAL SECURITY COMPLAINT<br>(Doc. 1)<br><br>ORDER DIRECTING THE ENTRY OF<br>JUDGMENT FOR DEFENDANT MICHAEL<br>J. ASTRUE, COMMISSIONER OF SOCIAL<br>SECURITY, AND AGAINST PLAINTIFF<br>MARIAELENA BARBO GARZA |

**BACKGROUND**

Plaintiff Mariaelena Barbo Garza ("Plaintiff") seeks judicial review of an administrative decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Pending before the Court is Plaintiff's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). On November 13, 2008, Plaintiff's complaint was filed in the United States District Court for the Eastern District of California. (Doc. 2). Plaintiff filed his opening brief on August 6, 2009. (Doc. 16). The Commissioner filed his opposition brief on September 8, 2009. (Doc. 18). Plaintiff filed a reply brief on September 23, 2009. (Doc. 19).

## BACKGROUND FACTS AND PRIOR PROCEEDINGS[1]

On October 26, 2005, Plaintiff filed an application for DIB benefits under Title II of the Act. AR at 110-14.  Plaintiff alleged in each application that he had been under a disability since March 29, 2005.  Id. at 110.  After initial denial of his request for benefits by the Social Security Agency, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 83.  On January 17, 2008, the ALJ held a hearing.  Id. at 27-52.  On April 12, 2008, the ALJ issued a decision denying benefits.  Id. at 17-26.  Specifically, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  Id. at 26.  On August 18, 2008, the Appeals Council denied review.  Id. at 4-7.

Hearing Testimony

Plaintiff testified she was born on November 6, 1959.  AR at 33.  She stated her level of education was a GED.  Id.  She stated that she had uncontrolled diabetes and uncontrolled high blood pressure.  AR at 47.

Plaintiff testified she last worked as a full-time stocker at Wal-Mart.  AR at 33, 34.  She recounted that her duties included picking up merchandise from trucks, loading them on pallets and then stocking them in the store.  Id. at 34.  She described lifting such items as six gallon water containers and 50-pound bags of dog food.  Id.  She stated that this job required her to stoop and climb ladders on a daily basis.  Id.  She stated she could not sit while at work except on breaks.  Id. She estimated she worked in this position about four to five years.  Id.

Before that, Plaintiff testified that she worked as a beverage supervisor at Wild Water Adventures.  AR at 35.  She stated that her job was to make sure that all drink stations at the facility (which she estimated numbered between five and six) had soda, beer, cups and napkins.  Id.  She reported that this job required her to lift containers weighing ten pounds and also beer kegs (with the help of another person) weighing 100 pounds.  Id. at 36.  She stated she worked in this job about four to five years.  Id.

Prior to her work at Wild Water, Plaintiff testified she worked briefly (about tow to three months) as a child care worker for a "special student."  AR at 37.  She described the child as about

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

five to six years old with behavior and attention problems. Id. She stated that this job required her to restrain the child if he became aggressive toward others. Id.

Plaintiff also testified that she worked as a cashier at a checking cashing firm. AR at 38. She recounted that this job required her to use a cash register, computer, fax, copying machine and perform administrative functions such as keeping track of checks and client files. Id. at 38-39. In addition, she stated she was required to lift money bags weighing about ten pounds. Id. at 39.

Plaintiff testified she stopped working in March 2005 because of "problems" with her right shoulder. AR at 39. She stated that beginning in 2004, her right shoulder became very painful. Id. at 40. She reported that she had surgery in June or July of 2004 and returned to work but her shoulder continued to hurt along with her back and neck. Id. She stated that she was scheduled for additional surgery on her right shoulder "soon." Id. at 45. She characterized her neck pain as shooting up her ear and stated it hindered her ability to lie down sideways. Id. at 42. In fact, she described pain on the "whole right side of my body." Id. at 41.

Plaintiff also testified she had pain in her right hand, her left shoulder and left hand. Id. She reported that the pain was worse in the right hand than the left. Id. at 46. She described a numbness and tingling sensation in her hands and wrists. Id. at 45. She stated that this pain began a couple of months after she stopped working. Id. at 42.

Plaintiff testified that she got headaches about twice daily that lasted for about 30 minutes. Id. at 42. She said that she took medication for headaches and would also have to lie down. Id. She reported that she took medication for her other pain as well. Id. at 41, 45.

Plaintiff believed she could sit in a chair for about 1.5 to 1.75 hours without having to get up. AR at 42. She estimated she could walk for about 30 minutes without needing to sit down. Id. She estimated she could stand for about five or ten minutes at a time. Id. at 43. She estimated she went to bed about 9 p.m. and would not get up until 11 or 12 the next day but, because of her pain, she got no more than about five to six hours of sleep during that period. Id. She stated she took medication, including Elavil, Soma and something she described as "narco"[2] to help her sleep. Id.

---

[2] Presumably, Plaintiff is referring to "Norco."

Plaintiff testified she had "mood swings" and "cries a lot." AR at 44. She stated that most days she stayed in bed and watched television. Id. at 47. She estimated that during a typical 8 a.m. to 4:30 p.m. day she would lie down about 90 percent of that time. Id. at 48. She claimed she didn't read because it hurt her neck and that, although she could write, it was difficult. Id. at 44.

Plaintiff stated that she washed dishes, cleaned and did light housework but added that it was painful to do these things. AR at 46. She recounted that numbness, tingling and clumsiness in her hands and wrists caused her to drop things, like cups and glasses. Id. at 45.

Plaintiff testified she drove to the store and appointments occasionally but often someone else did the driving. AR at 46. She stated she used to go to church but stopped about four months prior to the hearing. Id. Plaintiff testified that her boyfriend was "able bodied" and prepared the meals but she made sandwiches and used the microwave. AR at 47, 48. She estimated she could lift a gallon of milk with both hands and a half gallon with one. Id. at 47.

Relevant Medical Record

Plaintiff was treated by Dr. Sanjay Chauhan for complaints including cervical pain radiating to her arm, headaches, right shoulder pain and lumbar pain (radiating to both legs) in 2005 and 2006. AR at 400. A report filed by Dr. Chauhan in May 2005 noted a full range of motion in Plaintiff's cervical spine, spasms in her thoracic spine and a 70% range of motion in her lumbar spine due to pain. Id. Dr. Chauhan diagnosed cervical, thoracic and lumbar spine strain, headaches, and right shoulder pain post-surgery (a June 2004 arthroscopy) and depression due to pain. Id. Dr. Chauhan noted that his findings were consistent with Plaintiff's account of her maladies and also noted that pain medications prescribed to her eased her pain somewhat. Id. at 392, 400.

Dr. Chauhan documented a somewhat reduced assessment of Plaintiff's motor strength in her upper and lower extremities (4/5). AR at 394. He further noted there was altered sensation in Plaintiff's lower right extremities. Id. at 395. Numerous follow-up exams from 2005 through February 2006, reiterated these findings. See id. at 359, 363, 365, 367, 369, 371, 373 and 380. In a May 2006 report, Dr. Chauhan opined that Plaintiff's condition was not yet permanent and stationary but concluded that she was totally, temporarily disabled. See id. at 354-58.

An orthopaedic surgeon, Dr. Scott Rosenzweig, examined Plaintiff in June 2005. Dr.

Rosenzweig noted Plaintiff's history of right shoulder surgery in June 2004 and reported three, well-healed surgical scars. AR at 343. He documented a full range of motion in Plaintiff's left shoulder and right wrist, but noted a limited range of motion in her right shoulder. Id. Dr. Rosenzweig also recorded that Plaintiff had pain with impingement testing of the right shoulder, discomfort in that area with drop arm testing and he noted positive testing for Tinel's and Phalen's sign (carpal tunnel tests). Id. He cited an EMG nerve conduction test as supportive of right side carpal tunnel syndrome. Id. at 344.

Dr. Rosenzweig also analyzed MRIs of Plaintiff's shoulders, noting acromioclavicular joint arthritis, impingement and a partial thickness tear of the superspinatous tendon and fluid in the bursa of the right shoulder and acromioclavical joint arthrosis in the left shoulder. AR at 344. Dr. Rosenzweig diagnosed bilateral shoulder pain–worse on the right side, right shoulder impingement, rotator cuff tear and right carpal tunnel syndrome. AR at 344. He recommended a right wrist splint, physical therapy for the shoulders and right wrist, ice heat and topical liniment, steroid injections for the right wrist and/or shoulder and possible surgical intervention for the right wrist and/or shoulder if the conservative treatment failed. Id. at 345.

In 2006 and 2007, Plaintiff was treated by Dr. Shen Ye Wang. In an August 2006 report for the state Department of Social Services, Dr. Wang wrote that Plaintiff's pain complaints were credible given her maladies and concluded that he didn't expect much improvement in her condition. AR at 389-90, 353. He did not believe she could work full time, even if the work as sedentary. Id. Progress notes indicated that Plaintiff had follow-up examinations with Dr. Wang throughout the latter half of 2006 through November 2007. Id. at 486-501, 535-543. These reports documented Plaintiff's complaints of back, leg, shoulder and neck pain, as well as shooting pain from these areas to the head and extremities. See id. Dr. Wang diagnosed right shoulder rotator cuff tear, disc herniation with radiculopathy and right side carpal tunnel syndrome. See AR at 486, 489, 493, 499 and 501. Dr. Wang prescribed several medications for treatment including Elavil, Mobic, Soma and Vicodin. See id. Also, Dr. Wang recommended a surgical consultation for possible carpal tunnel release surgery. Id. at 489.

In an April 2007 report, in addition to reiterating a diagnosis of carpal tunnel syndrome and

rotator cuff tear, Dr. Wang noted that Plaintiff's conditions prevented her from performing a full range of sedentary work. AR at 545-46. Dr. Wang further concluded that Plaintiff could not work an eight-hour day, five days a week and was temporarily totally disabled. Id. at 546. In notes from several follow-up exams through November 30, 2007, Dr. Wang reiterated his diagnoses and his conclusion that Plaintiff was temporarily totally disabled due to her physical impairments. See id. at 535-541, 543.

Plaintiff was examined by Dr. Juliane Tran in March 2006. She noted Plaintiff's complaints of right carpal tunnel syndrome and pain in her neck and back and noted Plaintiff was being treated with numerous medications, including Lisinopril, Metformin (for diabetes), Flexeril, Soma, Elavil, Ibuprofen, Lipitor and Insulin. AR at 316. She recorded that Plaintiff had been diagnosed with diabetes since 1995 or 1996. Id.

Dr. Tran's general impressions following her examination, noted that Plaintiff walked without assistance but found her gait and mobility "slow" and "guarded," and noted that she seemed "uncomfortable" with her mobility. AR at 317. She noted that Plaintiff used no assistive device for ambulation. Id. She recorded that Plaintiff was able to remove her shoes and socks by herself but noted it took her "quite a while." Id. She also recorded that Plaintiff's effort decreased with strength testing of her right upper extremity. Id.

Dr. Tran further documented that Plaintiff tested positive for Tinel's and Phalen's sign (indicative of carpal tunnel syndrome) for the right hand, however, she was negative in the left hand and in the right elbow. AR at 317. She noted that a Neer's test was positive in the right shoulder. Range of motion testing indicated restrictions in the right shoulder due to pain but was normal in the left shoulder. Id. at 318. She documented Plaintiff as "nontender" over the cervical spine, cervical facet joints and thoracic spine. Id. She documented no evidence of any abnormal curvature or scoliosis, but noted tenderness in the right, lower lumbar spine. Id. She recorded Plaintiff's motor strength at full level (5/5) bilaterally throughout her deltoid, bicep and triceps but that she could not make a recording for other areas "due to giveaway resistance, decreased effort due to decreased maximal effort, with effort related to weakness (give away strain) when resistence is applied and by palpation of the muscle." Id.

Dr. Tran concluded that Plaintiff's right shoulder pain was likely due to her rotator cuff tear and also documented right carpal tunnel syndrome and back pain likely resulting from sprain/strain of the lumbosacral spine or discogenic pain. AR at 319. She opined that Plaintiff was restricted from activities involving prolonged standing/walking and sitting in excess of six hours. Id. She further opined that Plaintiff was restricted from lifting more than 50 pounds frequently. Id. She determined that Plaintiff was capable of "occasional" fingering and had no restriction of any kind with respect to grasping, balancing and heights. Id. She did note a restriction on frequent bending, stooping and crouching. Id.

Orthopaedic surgeon, Dr. Craig MacClean, examined Plaintiff on referral in March 2006. He noted that Plaintiff had full range of motion of her neck. AR at 419. Plaintiff tested negative for Spurling's sign. Id. Dr. MacClean documented the range of motion in Plaintiff's upper extremities as full and equal except for right shoulder abduction and right shoulder forward flexion motions. Id. Dr. MacClean diagnosed lumbar spine strain with lower extremity radiculopathy, right carpal tunnel syndrome, status post-surgery right shoulder, cervical spondylosis, and mild acromioclavicular arthritis in the left shoulder. AR at 421. Given the chronicity of her lower back symptomology he believed further neurosurgical consultation was warranted but also noted that given her "multiple" disc level pathology, surgery was less feasible than more conservative treatment, including steroid injections. Id. at 422. Dr. MacClean believed that carpal tunnel release surgery was reasonable and recommended further consultation with a specialist concerning Plaintiff's right shoulder. Id. He agreed that her condition was not permanent and stationary. Id.

In February 2007, a non-examining state agency consultant, Dr. John Bonner, filed a Physical Residual Functional Capacity Assessment. AR at 472-78. Based on his review of Plaintiff's medical records, he concluded that Plaintiff retained the ability to stand/walk and to sit for six hours in an eight-hour day, to push and pull with limitations to "forceful" action due to pain in Plaintiff's right shoulder, and concluded that Plaintiff could balance, crouch and stoop frequently, crawl and kneel occasionally, but was restricted totally from climbing ladders, ropes or scaffolds. Id. at 473-74.

Dr. Bonner also determined that Plaintiff was limited in reaching but could do so occasionally (including overhead reaching), and believed Plaintiff was not restricted in handling,

fingering and feeling. AR at 474. He attributed Plaintiff's symptoms to medically determinable impairments but concluded that her subjective symptom complaints and limitations were out of proportion with the medical evidence. See id. at 476.

In August 2007, Plaintiff was examined by a neurosurgeon, Dr. Adam Brant. Dr. Brant reviewed MRIs taken in June 2007, and concluded that Plaintiff had "multilevel" lumbar disc herniations and noted slight compressions of nerve roots on the right side of her spine at L3-4 and L4-5. AR at 532. He opined that these herniations could explain some areas of her pain but noted that her pain complaints were "extremely broad, generalized, and without, for the most part, neuroimaging correlates." Id. at 533. Dr. Bryant noted, in particular, that Plaintiff's claims of significant left side pain were not supported by any left sided nerve root compression at any level. Id. He recommended against any spinal surgery. Id. X-rays and and an MRI performed in July and August 2007, confirmed Dr. Brant's findings of disc herniation. See id. at 527-30.

ALJ Findings

The ALJ first determined that Plaintiff met her insured status through December 31, 2010. AR at 22. The ALJ then evaluated Plaintiff pursuant to the customary five-step sequential evaluation. After determining that Plaintiff had not engaged in substantial gainful activity since her claimed onset date of March 29, 2005 (Step 1), the ALJ found (Step 2) that Plaintiff had the following severe physical impairments: lumbar disc herniation, a right shoulder rotator cuff tear, bilateral carpal tunnel syndrome, right shoulder impingement syndrome and diabetes mellitus . Id. However, he concluded that Plaintiff had no impairment, or combination of impairments, that met or exceeded the level required under Agency guidelines for presumed disability (Step 3). Id.

In the fourth step of his analysis, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand and walk or to sit for a total of six hours in an eight-hour day. AR at 22. The ALJ determined also that Plaintiff could occasionally stoop, crouch and reach overhead with the right upper extremity and could frequently climb, balance, kneel, and crawl. Id. at 23. Based on this RFC finding, the ALJ concluded that Plaintiff retained the ability to perform her past relevant work as a check cashier (Step

4).[3] Id. at 25.  On this basis, the ALJ determined that Plaintiff was not disabled as defined by the Act.  Id. at 26.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

---

[3] The ALJ made no alternative finding in regard to Plaintiff's ability to perform other work (Step 5).

9

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, *inter alia*, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] As noted, applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) had medically determinable and severe impairments, to wit, lumbar disc herniation, a right shoulder rotator cuff tear, bilateral carpal tunnel syndrome, right shoulder impingement syndrome and diabetes mellitus; (3) did not have an impairment which met or equaled one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) could perform her past work as a check cashier. AR at 22-23, 25. The ALJ then determined that Plaintiff was not under a "disability" as defined in the Act. Id. at 26.

Plaintiff challenges the ALJ's determination at Step 4 of the sequential evaluation process, where an individual's ability to perform her past work is assessed based on her RFC.

## DISCUSSION

Plaintiff presents two issues on appeal. First, she asserts that the ALJ failed to provide clear and convincing reasons for rejecting the opinion of her treating physician, Dr. Wang. (Doc. 16 at 4-9). Second, Plaintiff contends the ALJ improperly rejected her testimony as to her limitations. (Id at 10-12).

A.   The ALJ Properly Discounted the Opinion of Dr. Wang

As noted, Dr. Wang treated Plaintiff for more than one year between 2006 and the end of 2007. During this period, Dr. Wang examined Plaintiff numerous times. He diagnosed several maladies, including right shoulder rotator cuff tear, disc herniation with radiculopathy, and right side carpal tunnel syndrome. See AR at 486, 489, 493, 499 and 501. In two separate reports, one filed in August 2006 and the other in April 2007, Dr. Wang opined that Plaintiff was temporarily totally disabled and, essentially, incapable of performing any work. AR 353, 389-90, 545-46. Specifically, Dr. Wang concluded that Plaintiff's physical impairments prevented her from lifting more than five pounds, climbing ladders or stairs and engaging in any work, including sedentary work, on a full

---

[4] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

10

time basis. See id. His progress notes from regular examinations supported these findings as well. See id. at 486, 493, 499.

In his decision, the ALJ cited prominently, the findings and conclusions of Dr. Tran, an examining specialist, based on her March 2006 examination of Plaintiff. Dr. Tran noted Plaintiff's impairments of rotator cuff tear, without repair, to which she attributed her right shoulder pain, right carpal tunnel syndrome and back pain from sprain/strain of the lumbosacral spine. AR at 319. Despite these findings, she concluded that Plaintiff could stand/walk or sit for six hours in a day, could lift 50 pounds frequently, was capable of "occasional" fingering, and had no restrictions of any kind with respect to grasping, balancing and working in heights. Id. Dr. Tran found no restriction on Plaintiff's ability to bend, stoop and crouch. Id. The ALJ appears to have relied upon these findings in fashioning his RFC[5] and concluding that Plaintiff could perform her past work as a check cashier. See id. at 22-23, 25.

The uncontradicted opinion of a treating doctor may only be rejected for "clear and convincing" reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Even if contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Plaintiff contends that in light of Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), Dr. Wang's opinion was entitled to controlling weight, which would necessitate a finding of that she was disabled. See 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable

---

[5] The ALJ concluded that Plaintiff had "the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently, to stand and walk a total of 6 hours in and 8-hour work day, and also to sit a total of 6 hours. She can occasionally stoop, crouch, and reach overhead with the right upper extremity. She can frequently climb, balance, kneel, and crawl." AR at 22-23.

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.")  In <u>Orn</u>, the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over that of a treating physician.  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "'substantial evidence.'" 495 F.3d at 632.  "By contrast, when an examining physician provides "independent clinical findings that differ from the findings of a treating physician' such findings are 'substantial evidence.'" <u>Id</u>.  Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered.  <u>Id</u>. (Citations omitted).

     Review of Dr. Tran's report shows that in addition to reviewing Plaintiff's medical history, including x-rays of her thoracic spine, Dr. Tran conducted an extensive examination of Plaintiff involving numerous tests, including checking her coordination and gait, extensive testing of her range of motion, straight leg raises, motor and sensory exams and a test of her reflexes.  AR at 318-19.  Based on this testing, and the medical history, Dr. Tran made findings that were consistent with an ability to work and supportive of the RFC finding made by the ALJ.  <u>Id</u>. at 22-23, 319.  She also stated, uniquely, her belief, based on her own impressions and testing, that Plaintiff's effort during the exam was "decreased" and "not maximal."  <u>Id</u>. at 319.

     Although Dr. Tran's diagnoses coincided with Dr. Wang's (carpal tunnel syndrome, right shoulder pain and rotator cuff tear, and spinal/disc impairment) (<u>see id</u>. at 486, 489, 493, 499, 501), her findings were based on testing unique to her examination.  In fact, although Dr. Wang's progress notes infer that he engaged in physical examination and testing, such as testing of Plaintiff's range of motion, nothing in his notes or reports specifically explains the basis or specifically record the results of those tests, as did Dr. Tran in her report.  <u>See id</u>.  For these reasons, the Court concludes that Dr. Tran's findings constitute substantial evidence and, thus, Dr. Wang's opinion is not entitled to controlling weight.  <u>See Orn</u>, 495 F.3d at 632.

     Nevertheless, the ALJ may not properly discount Dr. Wang's opinion unless he provides

1  "specific and legitimate" reasons for doing so. Lester, 81 F.3d at 830. Upon review, the Court
2  concludes that the ALJ did just that. In addition to Dr. Tran's findings, the Court recounted the
3  findings of a non-examining consultant, Dr. Bonner. AR at 25. As previously recounted, Dr. Bonner
4  reviewed Plaintiff's records in February 2007, and filed a Physical Residual Functional Capacity
5  Assessment and concluded that Plaintiff could walk/stand or sit for six hours in and eight-hour day,
6  lift 50 pounds occasionally and 25 pounds frequently, push and pull with restrictions for "forceful"
7  pushing and pulling, balance, stoop and crouch frequently, crawl and kneel occasionally, and reach
8  occasionally (including overhead). Id. at 473-74. He also found that Plaintiff was not restricted in
9  handling, fingering and feeling. Id. at 474.

10  In addition, the ALJ discussed other medical evidence, including the findings of examining
11  consultants, Drs. Brant and MacClean. The ALJ noted, in particular, Dr. Brant's conclusion that
12  although Plaintiff's disc herniation "could potentially explain some of Ms Garza's areas of pain, her
13  pain was extremely broad, generalized, and without, for the most part neuroimaging correlates"
14  which further supported the conclusion that her claims of left side pain were not supported by any
15  objective evidence. See AR at 25, 533. The ALJ also noted that despite Dr. Wang's findings, and
16  those of other treating doctor's, the treatment was conservative and involved medications primarily.
17  Id. at 24; see Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the need for
18  conservative treatment suggests a lower level of pain and functional limitation). The ALJ also cited
19  the fact that Dr. Wang's opinion that Plaintiff could perform no work was presented in "very brief,
20  check-box forms without detailing any supporting findings." Id. at 25. Although, as noted, Dr.
21  Wang's progress notes infer examination and testing, nothing in his notes recounts the specific
22  clinical basis or testing upon which he relied.

23  In sum, the Court concludes that the ALJ's determination to discount Dr. Wang's opinion
24  was predicated upon substantial evidence, including the findings and conclusions of Dr. Tran, and is
25  entitled to deference. See Magallanes, 881 F.2d at 750 ("The ALJ is responsible for determining
26  credibility and resolving conflicts in medical testimony.") Therefore, the Court does not find error.

27      B.   The ALJ Properly Discounted Plaintiff's Symptom Testimony
28      Plaintiff next argues that the ALJ rejected Plaintiff's pain/symptom testimony without

providing clear and convincing reasons. (See Doc. 16 at 11).

At the administrative hearing, Plaintiff testified, *inter alia*, that her pain from her impairments prevented her from sitting in a chair for more that 1.5 to 1.75 hours a day and that she could walk no more than 30 minutes at one time or stand for more than five or ten minutes at one time. AR at 42, 43. She stated that the pain she experienced, particularly the pain in her neck, prevented her from reading and made it difficult to write. Id. at 44. She also estimated that during a normal day, between 8 a.m. and 4:30 p.m., she would lie down about 90 percent of the time. Id. at 48. The ALJ concluded that, although Plaintiff had "medically-determinable impairments [that] can reasonably be expected to produce her alleged symptoms," her statements concerning the "intensity, persistence, and limiting effects" of her symptoms were not credible. AR at 23.

Unless there is affirmative evidence that the applicant is malingering, where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which the applicant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner of Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991). In addition, general findings are insufficient, rather, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must provide "'specific, cogent reasons for the disbelief.'" Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999). Factors to be considered include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities; and (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

Upon review, the Court concludes, Plaintiff's arguments notwithstanding, that the ALJ provided a sufficient basis for rejecting Plaintiff's subjective pain testimony. In addition to citing the

medical evidence, including the findings of Dr. Tran and the x-rays and MRI evidence showing only mild or moderate degenerative disc disease, the ALJ pointed to inconsistencies between Plaintiff's testimony and her conduct. See AR at 23-24.  For instance, he noted that Plaintiff testified at one point that she lay down for 90 percent of a normal day but at another point she stated that she cleaned and did light housework including washing dishes, light meal preparation and drove herself to the store and various appointments. Id. at 23, 46.  He noted also Dr. Brant's conclusion that Plaintiff's claimed left side pain that was not supported by any objective evidence. Id. at 25, 533.  Finally, the ALJ noted Dr. Tran's belief that Plaintiff did not make her best effort on the testing, intimating that she was capable of doing more than she demonstrated. Id. at 24, 319.  Given these findings, and the objective medical evidence cited by the ALJ, including the opinions of Drs. Tran and Bonner, the Court finds that the ALJ articulated "specific, cogent reasons" for disbelieving Plaintiff's subjective symptom/pain testimony.  See Lester, 81 F.3d at 834.

**CONCLUSION**

The Court concludes that the ALJ relied on substantial evidence, namely the findings and conclusions of Dr. Tran and a non-examining medical consultant, in discounting the findings of Plaintiff's treating physician, Dr. Wang.  In addition, the ALJ properly discounted Plaintiff's subjective pain testimony.

1. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.
2. The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Mariaelena Barbo Garza.

IT IS SO ORDERED.

Dated:   **March 19, 2010**                                    /s/ Jennifer L. Thurston
                                                               UNITED STATES MAGISTRATE JUDGE